Douglas J. Pick, Esq.　　　　　　　　　　　　　　　　**Hearing Date: To Be Determined**
Eric C. Zabicki, Esq.　　　　　　　　　　　　　　　　　**Time: To Be Determined**
**PICK & ZABICKI, LLP**
Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:　　　　　　　　　　　　　　　　　　　　　　　Chapter 11
OXFORD ASSOCIATES GROUP, INC.,　　　　　　Case No. 17-12487 (MKV)

　　　　　　　　　　　Debtor
-----------------------------------------------------------x

### DEBTOR'S APPLICATION FOR AN ORDER ESTABLISHING BIDDING AND NOTICING PROCEDURES, AND SETTING DATES, IN CONNECTION WITH SALE OF DEBTOR'S INTERESTS IN SHARES OF COOPERATIVE STOCK ALLOCATED TO FIFTY (50) APARTMENTS LOCATED AT 632, 650 AND 678 WARBURTON AVENUE, YONKERS, NEW YORK, TOGETHER WITH THE APPURTENANT PROPRIETARY LEASES AND OCCUPANCY SUBLEASES, FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES AND INTERESTS, <u>SUBJECT TO HIGHER AND BETTER OFFERS</u>

TO THE HONORABLE MARY KAY VYSKOCIL,
UNITED STATES BANKRUPTCY JUDGE:

　　　　　Oxford Associates Group, Inc., the debtor and debtor-in-possession herein (the "Debtor"), as and for its application (the "Application") for the entry of an Order, substantially in the form attached hereto as *Exhibit "A"* (the "Bidding Procedures Order"), and pursuant to Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 6004-1 and 6006-1, establishing bidding and noticing procedures, and scheduling dates, in connection with the Debtor's sale of its interests in the shares of cooperative stock (the "Shares") in Hudson View Owners Corp. allocated in blocks to fifty (50) apartments (the "Apartments") in the buildings located at 632, 650 and 678 Warburton Avenue, Yonkers, New York 10701, together with the appurtenant proprietary leases (the "Proprietary Leases") and existing

1

subleases with occupants of the Apartments (the "Occupancy Leases" and, collectively with the Shares and the Proprietary Leases, the "Property"), free and clear of all liens, encumbrances and interests, and granting related relief, respectfully represents and alleges as follows:

## BACKGROUND

1. On September 5, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court and an Order for Relief was simultaneously entered. As of the Petition Date, the Debtor was authorized to remain in possession of its property and operate its business as a debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code. No trustee, custodian or receiver was appointed, and no committee of creditors was formed.

2. On January 18, 2019, the Debtor filed a separate motion (the "Sale Approval Motion") with this Court seeking approval of the Debtor's proposed sale of the Shares and corresponding assumption and assignment of the Proprietary Leases and the Occupancy Leases to Benedict Realty Group, LLC (the "Proposed Purchaser"), or to such other person or entity that makes a higher or better offer at the Auction (as hereinafter defined) in accordance with the proposed Sale Procedures attached to the Bidding Procedures Order as *Exhibit "A"*, free and clear of all liens, encumbrances and interests, pursuant to a proposed Purchase and Sale Agreement (a copy of which is attached to the Bidding Procedures Order as *Exhibit "B"*) (the "PSA"), pursuant to §§ 105(a), 363(b), (f) and (m) and 365(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and Local Bankruptcy Rules 6004-1 and 6006-1.

3. Without limiting the detail provided therein, and as more fully discussed in the Sale Motion, and the material terms of the PSA can be summarized as follows:

(a) Subject to higher or better offers, the Proposed Purchaser will pay the sum of $3,515,000 in consideration of the Debtor's conveyance of its interests in the Shares, the Proprietary Leases and the Occupancy Leases free and clear of all liens and encumbrances;

(b) The proposed sale is for "all cash" and is not subject to any mortgage contingency;

(c) The Proposed Purchaser will take the Apartments "as is" and "where is";

(d) The Debtor will assume and assign the Proprietary Leases and the Occupancy Leases to the Proposed Purchaser at closing;

(e) The Proposed Purchaser has remitted a good faith deposit in the amount of $351,500 which is currently being held in escrow by the Debtor's special real estate counsel and will be applied to the amounts payable at closing;

(f) In the event that it is not the Successful Bidder for the Property (as defined in the Sale Procedures), the Proposed Purchaser will receive a break-up fee of $50,000.00 from the Debtor.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Rules 2002, 6004, 6006 and 9006 and Local Bankruptcy Rule 6004-1 and 6006-1.

## RELIEF REQUESTED

5. By this Motion, the Debtor seeks the entry of the Bidding Procedures Order establishing and approving the bidding and noticing procedures (as more fully discussed below), and scheduling dates, in connection with the Debtor's sale of the Property.

### A. Proposed Sale Procedures

6. The Debtor respectfully requests approval of the proposed Sale Procedures in connection with the proposed sale of the Property. Without limiting the detail provided therein, the principal terms of the Sale Procedures can be summarized as follows:

(i) Any person or entity who wishes to bid to acquire the Property at the Auction (as hereinafter defined) (a "Potential Bidder") must be pre-qualified by the Debtor (a "Pre-Qualified Bidder"). A Pre-Qualified Bidder is a Potential Bidder who, on or before March 13, 2019 at 5:00 p.m. (Eastern) (the "Qualifying Deadline"), delivers the following information/documents (the "Qualifying Packet"), by hand, by nationally recognized overnight mail courier, or by e-mail, so as to be actually received by the Debtor's counsel:

   (a) The identity of the person or entity that will be bidding for the Property or otherwise participating in connection with such bid on behalf of the Potential Bidder, and the terms of any such participation;

   (b) The Potential Bidder's address, telephone number and e-mail address where the Potential Bidder may be contacted;

   (c) A written statement that the Potential Bidder is financially able and interested in acquiring the Property for a cash price of not less than $3,615,000, without contingencies as to financing and/or additional due diligence, and subject to all material provisions of the PSA (hereinafter defined) (it being understood, however, that the Potential Bidder, while bound to its bid if made at the Auction, shall not be deemed to have made an offer to acquire the Property binding upon the Debtor prior to the time that the Auction is conducted and the sale is approved by the Bankruptcy Court);

   (d) Documents fairly and reasonably demonstrating that the Potential Bidder is financially able to close on its bid to purchase Property if the Potential Bidder should be the Successful Bidder (as hereinafter defined) (e.g., a "proof of funds letter" from a United States bank evidencing an available balance of at least $3,615,000);

   (e) A deposit in certified funds, bank check, or wire transfer (upon instructions from the Debtor's counsel) of not less than $180,750 to be held as a good faith deposit pending the conclusion of the Auction which will be used as a credit toward the Contract Deposit

4

(as hereinafter defined) or returned to the Potential Bidder in the event the Potential Bidder does not submit the Successful Bid (the "Good Faith Deposit");

(f) A written acknowledgement that, if the Potential Bidder is deemed to have submitted the highest or best bid (the "Successful Bid") for the Property, it shall, within two (2) business days after the Auction, pay to the Debtor in certified funds, bank check, or wire transfer (upon instructions from the Debtor's counsel) the additional funds necessary to increase the Potential Bidder's Good Faith Deposit to an amount equal to ten (10%) percent of the Successful Bid (the "Contract Deposit"), with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO INCREASE THE DEPOSIT;

(g) A written acknowledgement to close on the purchase of the Property if the Potential Bidder's bid at the Auction is selected as the Successful Bid no later than seven (7) business days after entry of an Order by the Bankruptcy Court approving the sale, or on such other date as the Debtor and the Successful Bidder shall otherwise agree to in writing, or as may otherwise be established in accordance with the terms hereof (such date, the "Closing Date"), with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING;

(h) A written acknowledgment that, if such Potential Bidder is determined by the Debtor to have submitted the second highest bid at the Auction (the "Back-up Bid") and, therefore, to be the back-up bidder (the "Back-up Bidder"), and the Debtor determines to proceed with the Back-up Bid after default by the Successful Bidder, to close on the purchase of the Property on the Back-up Closing Date (as hereinafter defined), with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING;

(i) A written acknowledgement that, if the Potential Bidder (i) is the Successful Bidder, that the Good Faith Deposit shall become non-refundable and shall be forfeited to the Debtor as liquidated damages if the Successful Bidder shall fail to close the purchase for any reason whatsoever on the Closing Date; and (ii) is the Back-up Bidder and the Debtor determines to proceed with the Back-up Bid after default by the Successful Bidder, that the Good Faith Deposit

5

        shall become non-refundable and shall be forfeited to the Debtor by such Back-up Bidder as liquidated damages if the Back-up Bidder shall fail to close the purchase for any reason whatsoever on the Back-up Closing Date; and

    (j)    These Sale Procedures signed by the Potential Bidder acknowledging and agreeing to these Sale Procedures.

(ii)    Prior to the Auction, the Debtor will evaluate each Qualifying Packet and determine Pre-Qualified Bidders who may participate at the Auction. Potential Bidders that submit a deficient Qualifying Packet will be allowed to correct any deficiencies up to the Qualifying Deadline, at the Debtor's sole discretion.

(iii)    The Property is being sold "as is" and "where is" and each Potential Bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its bid.

(iv)    In the event that the Debtor receives, by the Qualifying Deadline, one or more submissions that the Debtor determines to be from Pre-Qualified Bidders, the Debtor shall conduct an auction, in accordance with the Sale Procedures, on March 15, 2019 at 10:00 a.m. at the offices of the Debtor's undersigned counsel, for the purpose of determining the highest and best offer for the Property (the "Auction").

(v)    The Auction shall be live and in person and shall be governed by the following procedures:

    (a)    Only representatives of the Debtor and Pre-Qualified Bidders, and their respective counsel, agents and designated representatives, may participate at the Auction, and only such parties, any brokers or auctioneers appointed by Order of the Bankruptcy Court and a stenographer may be present throughout the Auction;

    (b)    Only Pre-Qualified Bidders shall be entitled to make any bids at the Auction;

    (c)    Each Pre-Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

    (d)    Pre-Qualified Bidders shall participate in person or through a duly authorized representative at the Auction;

    (e)    Any initial competing bid at the Auction must exceed the Opening Bid by at least $100,000 (*i.e.*, the initial competing bid must be for

$3,615,000 or greater) and bidding shall continue thereafter in minimum increments of at least $25,000 higher than the previous bid (or such other amount as may be agreed to by the Debtor, after consultation with its professionals) provided however, the Debtor may decrease bidding increments in its sole discretion in the interest of spurring bidding;

(f) Bids at the Auction must be all cash, without financing or other contingencies, and must be substantially in the form and contain all material provisions of the PSA;

(g) The Auction shall continue until such time as it appears to the Debtor, in consultation with its professionals, that none of the Pre-Qualified Bidders is prepared to advance the Auction and the Debtor determines the highest and best offer submitted at the Auction from among the Pre-Qualified Bidders (the "Successful Bid") and identifies the maker of the Successful Bid as the successful bidder for the Property (the "Successful Bidder"). In the event of a dispute over which bidder presented the highest and best offer, the Debtor shall choose the top three (3) Pre-Qualified Bidders and the Court shall decide which is the highest and best subject to all parties' right to object.

(h) If more than one Pre-Qualified Bidder submits a bid in excess of the Opening Bid, after selection of the Successful Bidder, then the Debtor shall determine which such bid constitutes the Back-up Bid;

(i) In considering bids submitted by Pre-Qualified Bidders at the Auction, the Debtor may request that Pre-Qualified Bidders provide for review by the Debtor at the Auction financial information which fairly and reasonably demonstrate the Pre-Qualified Bidder's ability (and the sources of the said ability) to close on its purchase of the Property if the Pre-Qualified Bidder should be the Successful Bidder based upon the bids submitted at the Auction; and

(j) Deposits submitted by Pre-Qualified Bidders who do not become the Successful Bidder or Back-up Bidder shall be returned by the Debtor to such Pre-Qualified Bidders within three (3) business days after the Auction, except as otherwise provided herein.

7. The Debtor respectfully submits the proposed Sale Procedures are reasonable, efficient and proper, are supported by the Debtor's reasonable business judgment, and will maximize

the value of the Property for the benefit of the estate and its creditors. The Debtor further respectfully submits that the proposed March 15, 2019 Auction date is appropriate as it would provide the Debtor with approximately forty-five (45) days from the entry of the Bidding Procedures Order to solicit higher and better offers for the Property. The Debtor will continue to pay all maintenance, mortgage obligations, operating expenses and the like in connection with the Property pending the Auction and the consummation of the sale of the Property to the Successful Bidder.

**B.    Proposed Break-Up Fee**

8.    The proposed Bidding Procedures Order provides that, in the event that it is not the successful bidder, the Proposed Purchaser will receive a break-up fee of $50,000.00 from the Debtor. With respect to the proposed break-up fee, the Proposed Purchaser has expended a significant amount of time and expense (including the payment of counsels' fees) in conducting its due diligence regarding the fifty (50) Apartment units being sold and in negotiating the terms of the PSA. Thus, the Purchaser has insisted upon the inclusion of the proposed $50,000 break-up fee connection with the solicitation of higher or better offers (*see* Paragraph 2 of the PSA). The Debtor has structured the proposed break-up fee so that it is encompassed in the $100,000 initial overbid amount and will not be payable by the Successful Bidder.

9.    The Debtor respectfully submits that any chilling effect that the inclusion of the break-up fee within the initial overbid amount may have on potential bids is a "necessary evil" and is mitigated by the substantial nature of the Proposed Purchaser's cash offer. A good deal of case law supports the payment of a break-up fee in bankruptcy, which has become an established practice. *See, e.g.*, In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted); In re

8

Integrated Resources Inc., 135 B.R. 746 (Bankr. S.D.N.Y), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992). The Debtor believes that the break-up fee, which is modest given the size and scope of the transaction, is fair and reasonable and is designed to compensate the Proposed Purchaser for the time and expense in conducting its due diligence, negotiating the PSA and agreeing to serve as a "stalking horse" bidder, without unduly interfering with the Debtor's ability to realize maximum possible value of its interests being sold. Accordingly, the break-up fee should be approved.

**C.     Sale Approval Hearing Date and Proposed Notice**

10.     Pursuant to Bankruptcy Rules 2002(a)(2), creditors are entitled to twenty-one (21) days' notice in connection with a proposed sale "unless the court for cause shown shortens the time or directs another method of giving notice." Bankruptcy Rule 2002(c)(1) governs the content of the notice of proposed sale and requires that notice include, *inter alia*, the terms and conditions of any sale and the time fixed for objections. A general description of the assets to be sold is also required.

11.     The Debtor hereby requests that the Court schedule a hearing with regard to the Sale Approval Motion so as to consider the approval of the sale to the Proposed Purchaser or other Successful Bidder. The Debtor requests that said hearing date be scheduled for the Court's earliest available date after the Auction.

12.     The Debtor proposes to serve a notice, substantially in the form attached to the Bidding Procedures Order as *Exhibit "C"*, with the Sale Procedures attached hereto, upon: (a) all known creditors of the Debtor or their counsel if known; (b) the United States Trustee; (c) the Dept. of Treasury - Internal Revenue Service; (d) the New York State Dept. of Taxation and Finance; (e) the New York City Dept. of Finance; (f) the Office of the New York State Attorney General; (g) the Office of the United States Attorney General; (h) the New York City Law Department; (i) the Office

17-12487-mkv    Doc 135    Filed 01/23/19    Entered 01/23/19 18:23:59    Main Document
Pg 10 of 11


of Corporation Counsel for the City of Yonkers; (j) the Westchester County Department of Law; (k) all persons who have filed notices of appearance in the Debtor's case on or prior to the date hereof; and (l) any person or entity which has shown any interest in acquiring the Property, by first class mail, within five (5) business-days following the entry of the Bidding Procedures Order. The Debtor believes that the Notice provides sufficient information relating to the proposed sale to permit a party to be fully informed of the nature and terms of the proposed transaction in accordance with Bankruptcy Rule 2002(c)(1).

13. The Debtor further proposes to: (a) have BSL Holdings LLC d/b/a Century 21 Schneider Realty (the Debtor's exclusive real broker retained pursuant to Court Order) post a listing on its internet website and on LoopNet.com (a popular commercial/investment real estate listing website) incorporating the material provisions of the notices attached to the Bidding Procedures Order and maintain said listing on its website through the conclusion of the Auction; and (b) publish a notice, substantially in the form attached to the proposed Bidding Procedures Order as *Exhibit "D"*, in *The Journal News* not less than one (1) time on a date that is not less than seven (7) days prior to the Auction.

14. Under the facts and circumstances presented, the Debtor submits that the proposed notice procedures would provide parties in interest with ample notice and opportunity to be heard as to the relief requested and also afford potential competing bidders sufficient time to formulate any bids for the assets being offered for sale.

## CONCLUSION

15. Based upon the foregoing, it is respectfully requested that this Application be granted in its entirety along with such other and further relief as may be just and proper.

Dated: New York, New York
      January 23, 2019

                          **PICK & ZABICKI LLP**
                          Counsel to the Debtor

                          By: _____
                               Douglas J. Pick
                               369 Lexington Avenue, 12th Floor
                               New York, New York 10017
                               (212) 695-6000